on behalf of Mr. Linder, Mr. Bruce Kirkland, on behalf of the people, Mr. Adam Franklin. Mr. Kirkland, you may proceed. May it please the court and counsel, good morning, your honors. My name is Bruce Kirkland. I'm with the Office of the State Appellate Defender. I represent the appellant, Mr. James Linder, this morning. James Linder had a three-day jury trial on charges of drug-induced homicide. The second day of that trial was dominated by other crimes, evidence of a January 31st controlled drug that was set up by police. There were nine witnesses that day. Four of the first five of those witnesses testified directly to this drug transaction that occurred the day after the transaction for which Mr. Linder was charged. This overly excessive use of other crimes evidence of the January 31st delivery deprived Mr. Linder of a fair trial. First, it introduced an excessive amount of propensity evidence that over-persuaded the jury and allowed them to... What, they entered two verdicts of guilty? Well, that's not what propensity evidence... Well, when you said they over-persuaded them, I thought you're saying that they just ran them up and kept signing verdict forms all over the place. Well, I think the case law is pretty clear. Going back to people versus Linder, the Illinois Supreme Court has recognized that the danger of other crimes evidence is that it over-persuades the jury that a person is a bad person, and it clouds their ability to fairly address credibility, to assess the weight of evidence, and to render a fair... I would have said prejudices that your... rather than persuades them. Counsel, you said on day two there were nine witnesses. Four of them discussed this additional control by, separate and apart from, the offense for which he was on trial. That is correct. Okay, so here's my question. Approximately how many witnesses testified? There were numerous witnesses, over 20. I believe 23 is the number that the state does, and they frame it as only five, not 23, but we're also talking paramedics, medical expert witnesses... Hold on, let me put it this way. How many witnesses did more than just identify... Cody Hillier, the gentleman to whom Mr. Linder was charged with selling the drugs to, the boyfriend of the victim. On the second day of trial, Jeff Feil, who's an Illinois state police sergeant assigned to the North Central Narcotics Task Force, testified extensively to the second day drug buy. He was followed by... No, here's my question. Who of substance testified other than about this January 31st event? Because you made a point of saying, look, it was four out of nine witnesses on day two. My question is, of the 23 witnesses, how many were substantive that did not impact or talk about the January 31 event? I think there were one, two, three, four police officers, a drug chemist, so six. I would say a total of six testified as to the January 31st, which is an excessive amount of other crimes evidence. Much of it was duplicative. It was marginally relevant at best to show the identity of the person who sold the drugs on January 30th, which was the original basis of the motion in limine, which the trial court granted to the homicidist. Well, are you saying that Mr., I think his name's Hillier or Hillier? Hillier, I believe. It's spelled Hillier, wasn't it? Should he have been the only one to testify? I think there's a legitimate use of some other crimes evidence to establish identity. When police began interviewing Mr. Hillier, he knew the person who sold them drugs as a person named Tim. Did Mr. Hillier sign a letter and give it to, or have it delivered to the defense counsel saying that that was all bogus? He did. So would you say that it's fair to say that Mr. Hillier's credibility is somewhat in doubt, even though he supposedly disavowed that letter? I believe his credibility was. Well, if that's the case, then why wouldn't there be required other people to testify about the other crimes evidence? Right, we're not saying that all of the crime evidence here was improper on the issue of identity, but did you need four narcotics task force agents to come in and say we staked out a Walmart parking lot, repeated testimony of I saw this person go to this car, I saw a tic-tac-toe. But did they ever, was it ever cumulative? Because my recollection was it wasn't cumulative. It was like one guy, pardon me, one officer saw a segment in time, another, and then lost sight or lost view. Then someone else filled in a gap and then someone else filled in a gap. So the number of witnesses didn't result in multiple redundancies of the same timeline. I believe there's some exceptions to that statement, though. I mean, two of the officers were sitting in the same car and testified they saw the same witness, the same person in the suspect car and Mr. Hillier exchanging some objects consistent with a narcotics transaction. That's clearly cumulative. Well, Counsel, wasn't this all foundational to establish the fact in this case about what they saw? And you needed all of those officers to lay that foundation, rather than just get to the conclusion that he brought those drugs on that day? I mean, if all this evidence is admissible in the theory for the reason for identity, I don't understand how it's foundational to say, to have cumulative evidence of I saw a drug transaction. What is the relevance of testimony of the person who made the traffic stop afterwards? He had $1,500 in his wallet. I don't understand how that goes to identity. Mr. Hillier identified Mr. Linder in court, that he was a person who sold them drugs. It was a half a day of trial on this uncharged drug transaction that was initiated by police. What are the limits of other crimes evidence? But is another crime, in this case, the other crimes evidence initially being offered for identity, can it not be used for another purpose? Doesn't the case law support that? Yes, I would agree with that. However, when you read the instruction and what the jury was instructed, it could consider this for method of sale on the previous day, January 30th. That's not a recognized other crimes evidence use. Weight of the substance, I mean, we've got a reasonable doubt issue here also, where they took the evidence that was seized after the second transaction, weighed it, and offered that as proof of the weight of the evidence of the day before. That's improper use of other crimes evidence. Yes, other legitimate and legally recognized reasons can come in, but it exceeded even that, as seen in the actual instruction to the jury. The jury was instructed it could consider this for purposes other than identity and for other legitimate other crimes purposes. It certainly is questionable and we claim that it's improper for police to be able to set up a drug transaction, take the drugs that are seized in that transaction, and offer that as proof of the weight or the content of drugs that were sold the previous day. There's no direct evidence in this case of the amount of drugs, whether it exceeded one gram, that was sold on January 30th. There was no testimony in this case that he wished to purchase three half grams? That was, yes, that was the testimony. And isn't that direct evidence? That, well, under People v. Jones, our Illinois Supreme Court says you can't use circumstantial evidence to prove content and weight of non-homogenous controlled substances. I mean, that, I mean, I think of an example of when you go to buy gasoline, there's a little sticker on the gas pump that says this pump has been inspected and certified as reliable by the, I believe it's the Illinois Department of Agriculture. You don't get that in a drug transaction. There's no guarantee that just because you ask for a half gram bag, you get a half gram. And then that's kind of the basis of the Jones decision. He didn't get, he didn't get three half gram bags, did he? He got conservatively less, he got less than a gram. No, I thought he got 1.036. 1.036. Grams. So, think about that for a second, though. Three percent, three one-hundredths of a gram makes a difference between. You round it up to 1.4, pardon me, 1.04. It's a significant point in this case, though, because it makes the difference between a class X felony with a minimum of six and a class X felony with a minimum of 15. I mean, that's an element that has to be proved beyond a reasonable doubt. And when it's, I mean, it's that close, and you can't cross-compare the two dates. What's the difference between propensity and lotus aberrandi? Propensity is, I mean, what I think of it as is muddying up the defendant. I think it's showing his propensity to commit bad acts, to be a bad person, is the message that it sends to the jury. Do you see any similarity insofar as a lotus aberrandi between the 30th and the 31st sales? I do. I mean, there's certain overlapping. Well, the fact that Cody Hilliard testified that he purchased drugs from the defendant on January 30th, and by contacting him, traveling to Zion, purchasing drugs. That's also what happened on the 31st, so there's some common characteristics. If that's what they were admitting this for, why didn't that become the instruction to the jury? You can consider this for more zaparaniac, that's what they're calling it. Instead of method of sale the day before, weight of the substance. It's, they got off track with this instruction and allowed this other crime's evidence, which was excessive. There was almost a whole day of testimony about this transaction and to use it for non-recognized purposes. What other evidence could the state have used or introduced to show the weight of the drugs that were sold on the original date? Because you had the testimony from the purchaser who said he wanted the same drugs. So what other evidence could they have used? I don't know. I know that it's an oddly constructive statute. It's how I think of it. I mean, to say that the weight of the drug matters and then there's consumption of that drug certainly creates problems for the state. But that's how the legislature set up the statute. I don't know how to solve the state's adventure in issuing that case. Isn't the testimony of Mr. Hillier sufficient if it's believed by the jury that on the 30th he bought over a gram of drugs from your client? He never testified that he purchased over a gram. He said he asked, he arranged to purchase what he believed was three half gram bags. But that doesn't show how much heroin was in those three bags. As we learned the next day, it was 1.03, talking three one hundredths of a gram here. So he never testified that he weighed this. What you're saying is we shouldn't believe the text messages where your client indicated that he was going to sell three half gram bags and that he was going to charge $180 when supposedly one gram costs about a hundred. It sounds like truth in packaging problems here as well. And that's what the Supreme Court recognized in Jones, that you can't make those presumptions because these non-homogenous powdered substances, you can't make any presumptions. You can't consider that circumstantial evidence as proof beyond a reasonable doubt. In Jones- I didn't call them presumptions. I believe it's more than the nature of common day and everyday experience. Common sense and everyday experience. I mean, the Supreme Court in Jones says no. Supreme Court in Jones said there's five packets. If you only test two of them, you can't presume to make any conclusions about the other three. That's when you got five packets from the same transaction. It's even a bigger stretch to say something from the next day, can it also be- Your client obviously didn't claim that, yes, I sold him the drugs, but it wasn't one gram. The defendant did not testify at this trial. Wasn't there additional evidence from the expert who testified that typically one gram is $100? So this was presented to the jury as well? Yes, there was expert testimony as to street value and the cost of it. And in fact, that was Sergeant Morasky who testified- That's what it was, yeah. And half of the other officers who testified are what they saw and the forensic drug chemists that are under HURL about the 1.036. Again, we come back to this truth in packaging problem. You know, when you- If I may continue to wrap it up as soon as I can here. You know, you're relying on the honesty of people who sell narcotics. And we're talking about small amounts here. We're talking about grams, hundreds of a gram, three-hundredths of a gram with enormous consequences in sentencing. Minimum of six years, minimum of 15 years. The fact that the going rate when people discuss these things and so is ostensibly that you should get a gram and a half for $100. It doesn't mean you do. If I understand your argument, the statement that was allegedly made by your client to Mr. Hillier on the 30th and the 31st and in text messages on one or both of those days cannot be used as admissions against his interests insofar as the weight of the drugs that were supposedly sold by him in the transaction. That's correct. There's no evidence of how they were- of what happened to them prior to the purchase by Mr. Hillier, of how he practices them. It's a placated order, but what do you get when you place that order? We don't know. Jones teaches us that you can't- You're making an argument. You answered my question with a definitive no, but then you proceed to make a rationale about your answer that seems to be inconsistent with the answer because the answer relates to the paucity of evidence outside of his admission. And if the answer is no because he didn't admit it or the answer is no because his admission was incompetent, I might understand why your argument relative to paucity might have some relevance, but I'm having a problem having a problem understanding why in this particular instance an admission as reported by witnesses doesn't constitute an admission. It's unreliable. The evidence of the second day indicates that. If he was to sell three half-gram bags that only weighed 1.036 grams, then it's not reliable. That's just the terminology of a certain package. In this case, it was weighed, it was by eye. When asked about can I order the same thing I got yesterday, he said I don't have the same stuff as yesterday. We're talking different. Any other questions? No. Thank you. You'll have an opportunity to make a point. Thank you, Judge. Thank you. Mr. Trejo. May it please the Court, Counsel, Adam Trejo on behalf of the people of the State of Illinois. At the outset, I'd like to clarify a few facts. Opposing counsel indicated that it was a three-day trial. It was actually a four-day trial, and out of the four days, the other crimes evidence came on the second day of trial, so it wasn't the first thing the jury heard. It wasn't the last thing the jury heard. And on that second day, nine witnesses, only five witnesses testified to the other crimes evidence. Are you saying on the second day, nine witnesses testified? Yes, and out of those nine witnesses, five of those testified to the other crimes evidence. Those included Jeff Feil, Raymond O'Brien, Brandon Burnaby, Timothy Cooney, and Rhonda Earl. Now, opposing counsel indicated that Rhonda Earl, the forensic chemist, testified that the controlled purchase yielded a little over a gram, the net weight. That means without the bag. However, later on in her testimony, she testified that the bags weighed 1.5 grams with the bag, and without the packaging, it weighed 1.3 grams. And that's found in the record approximately 733 in the ROP. So she later clarifies that, no, without the bag, it's more, 1.3 grams. Now, and the issue in this case was determining, was this individual, the defendant, the person who sold drugs to Healyer, who then delivered that to his girlfriend, who then held it and died, unfortunately. And here we have a witness whose testimony, whose credibility is severely undermined. You have a letter that indicates that, no, the defendant is not the individual who sold me those drugs. That's not him. Then later on in cross-examination, defense counsel says, how can we believe you? And Healyer says, I don't know how you can believe me. So the state was really required to prove beyond a reasonable doubt that this individual was the person who sold the drugs, and that's why it was so vital that the other crimes evidence came in to prove the identity of Healyer. And as this court noted, each individual testified to a segment of time. Jeff Fowle testified... Counsel, why did the state need five witnesses to testify to this other crimes evidence? To lay that foundation. Each one didn't observe the whole transaction. Each one, for example, two out of the five interviewed Healyer, the other three didn't. One was a chemist, wasn't involved on the scene. Was there ever an effort to get a stipulation to the foundational matters? I don't recall reading the proposal of stipulation or the refusal of stipulation. I don't believe that is in the record. But each individual testified to their participation. For example, Fowle testified that he's the one who retrieved the license plate number, which was linked to the defendant's name, and he's the one who executed the search warrant on the defendant's phone. Now, he's not the one who collected it. He didn't testify to that. Raymond O'Brien, he's the individual who confirmed that defendant lived in Zion. Where did the original purchase occur? In Zion. Officer Brandon Burdaby, he's the one who stopped the defendant's vehicle, and he's the one who discovered the cell phone. But he's not the one who executed the search warrant. Timothy Cooney, he interviewed Healyer, and he testified to Tim's phone number. Who is Tim? Cooney says, I got it, and I discovered text messages between Healyer and the defendant. Now, those text messages weren't limited to the controlled purchase. Those text messages included the text messages from the original purpose, at the relevant crime that's charged, the January 30th purchase. Without this foundation, and without each individual testifying, the jury doesn't know how these text messages came in to be. Are they the right text messages? That's why Cooney testified that this phone number, print records revealed that this phone number was registered to the defendant. Those are the five people that testified, and which proved that this individual delivered heroin to Healyer. We have his address. We have his number. It's all registered in the defendant's name. Now, after that, after that, the trial court did give a jury instruction. However, the jury instruction conference was off the record. We don't know if the defendant opposed the current... Actually, we do. On the record, page 951 through 52, when the IPI 3.14 is proposed, and it's about to be ruled on, defense counsel says, I don't object, so long as it's in its current modified form, different from the version discussed in the old informal conference, meaning that there was a different version proposed in the informal jury instructions conference, but we don't know. And gaps in the record should be construed against the appellant. Since the defendant didn't object because it was modified, there's an inference that leads us to conclude that the defendant wanted the current jury instruction. Counsel, you just said that gaps in the record should ignore against defense counsel. Should be construed. Construed. Pursuant to Pappas v. O'Brien. That conclusion is based upon a premise that the defense counsel should have done something that he didn't do, or didn't do something that he should have done. Well, something one... So, what did he do or not do in order for it to ignore against him? So, when the instruction was about to be ruled on, he says, I do not object as long as it's modified from the version discussed, previously discussed off the record. So, he's indicating that he did speak about something about that instruction in that informal jury instructions conference. Well, you just related that he didn't have any objection, and I don't have a problem with you relating that point. But you made a statement that you presumed certain premises, and one was you presumed that he was supposed to make a record. And since there were gaps in the record and he didn't make them, then it should be held against him. And my point is your statement was based upon either an incomplete or a false assumption. Well, here he did not object, which goes into his ineffective assistance of counsel claim, indicating that he didn't oppose the other crimes evidence. And here it shows that he did oppose it for its use for propensity during when the state politics motions eliminated 3 and 8. The defendant said the other crimes evidence shouldn't be admitted at all because it really goes to propensity. The trial court clearly did not prohibit the other crimes evidence. And he also filed a pro-trial motion again indicating that the other crimes evidence shouldn't have been presented, but as I have just posited, it should have been, it was rightfully admitted to show his identity. What was the evidence presented? And I apologize if I'm making you repeat yourself or repeat it. What was the evidence that indicated that the amount delivered on the date that the victim died was at least 1 gram of heroin? Well, we have, well thankfully the jury the jury's consumed of they have common sense. Individuals have common sense. And here there's testimony from Hillier who stated that two individuals used this heroin. Apparently, Hillier inhaled it when he was driving his girlfriend to a job interview, and they both inhaled it at his apartment and there was enough heroin to kill his girlfriend. So, there's a strong inference that one, you did supply enough heroin, one, to be used during the drive to be used at your apartment and enough heroin to cause the death of Then we have his testimony that says, I bought three half grams in exchange for $180. Now, the jury can add, it's not a complicated equation, .5 plus .5 plus .5 is 1.5 Then you have the text messages and in that text message the defendant confirmed I am going to sell you three half grams of heroin to you. And then of course we have the untested the heroin that was found underneath his mattress at Hillier's apartment. It's not strictly solely on his testimony and the text messages. There was a portion recovered, .2 grams in this case. They were found in two separate context cases underneath the mattress. So when you take that all together, that's presented Oh, and we also have testimony from an expert in street level narcotics who stated approximately $180 will give you 1.4 grams of heroin So we have an expert in street level narcotics the leftover heroin underneath the mattress Hillier's testimony and defendant's admission that yes, I will sell you 1.5 grams of heroin in exchange for $180 $180 Barring any other further questions So we're just going to assume that the defendant is a very reputable businessman? No, again this is a credibility determination and that's left up for the jury But you're hanging your hat awfully heavily on the defendant's representations Right, well it's in his best interest to he wants the money, he wants the $180 What I said and what I did to accomplish the sale may be two different things That's my point, that is correct But then again we have Hillier's consistent testimony that yes, I went and I bought 3.5 grams for 1.5 grams in exchange for $180  and I didn't find any case law that says you have to submit to the jury the whole heroin, the whole drug that was bought or delivered this was ingested and again he bought enough to use during the car ride, he bought enough to use at the heroin and he bought enough Didn't the defendant say he didn't have the same stuff, he had darker stuff Correct The forensic scientist said it was 1.03 and in one other spot 1.3 grams and then 1.5 with a bag which leads to the conclusion there's an inference that he weighed it with a bag and delivered it with a bag to get that total 1.5 grams Are there any further questions? The people of Center Illinois respectfully request that this court uphold the defendant's conviction and sentence Thank you Thank you Mr. Kirkham You may proceed Thank you your honors A couple things stand out about the state's argument Could you speak up a little louder please? I apologize sir A couple things stand out about the state's argument both in it's brief and here today The defendant relies heavily on people vs. Jones The Illinois Supreme Court case which stands for the proposition that you cannot prove the content of non-homogenous packets of controlled substance by circumstantial evidence I argued that in our initial brief The state did not respond to that and offered no response in it's written brief and it doesn't attempt to say why Jones doesn't control in this case today You can't presume the content of what was sold on January 30th by circumstantial evidence There was consumption that brought it down to less than 2 grams Am I correct in concluding that your argument is the only way the state can prove beyond a reasonable doubt that 1 gram was delivered or more is if a person who survives the sampling of the drugs took the drugs out of the container placed it on a balance beam scale or other device that weighs things in grams determines that there is more than 1 gram and then does he have to also preserve at least 1 gram or is it sufficient if that person testifies that they weighed the drugs before the victim ingested any amount and that there was at least 1 gram at the time of the weighting The state bears the burden of proof to prove the weight of the drugs that were sold for more than 1 gram. The legislature has created a statute that as I said earlier is somewhat oddly constructed in that it puts the burden on the state to prove more than 1 gram. As a defendant I don't know what the state can do in that situation That is their issue and frankly their problem at trial. If it's a kilo then you're going to have more than 1 gram Is it your argument that if a witness testifies that X gave me a gram and a half of drugs I gave it to the victim the victim ingested it and died that the jury could not find that witness credible and could not determine that the state had proven beyond a reasonable doubt that the amount of drugs delivered hadn't been proven to be at least 1 gram There's no proof beyond a reasonable doubt in that circumstance. It's speculation and Jones says you can't prove by circumstantial evidence Again we come back to this Is it you can't prove by circumstantial evidence or you can't prove it in this case by circumstantial evidence You certainly can't prove it in this case by circumstantial evidence You know if they had gone to Cody Hillier's apartment and found 2 grams in the little contact lens cases and he says I bought a gram and a half and he testifies we consumed a bunch of those 2 grams you can say it's over a gram a jury can find from that but not in this case where there was consumption down to less than 2 tenths of a gram and then the only other ways to prove beyond a reasonable doubt that it was over a gram is circumstantial evidence either by representations of people who were trying to sell things or trying to cross compare from a purchase the next day You can't do those under Jones Circumstantial evidence is not permissible to prove the content of these cases until January 30th There are no further questions I would first ask this court to reverse Mr. Linder's conviction and remand this cause for a new trial because of the excessive introduction of other crimes and the alternative I would ask this court to find that the element of the weight of the product sold on January 30th was not proved beyond a reasonable doubt and remand this cause for a new sentencing hearing under the lesser sentence in March Thank you We've heard all the cases that were scheduled on the call today